**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JOEL CHAPA, individually; DALILA ELIZABETH CHAPA, individually and as a person of interest; JAVIER ROCHA, individually; JOEL CHAPA, as next friend and parent of SOFIA ELIZABETH CHAPA, a minor; JOEL CHAPA, as next friend and parent of CAMILA CHAPA, a minor; and DALILA ELIZABETH CHAPA, as next friend of RAQUEL ROCHA, a minor; | ) ) ) ) ) ) ) ) ) ) | |
| | ) | **Civil Action No.:** ----------------------- |
| | ) | |
| | ) | **JURY TRIAL** |
| Plaintiffs, | ) | **DEMANDED** |
| v. | ) ) | |
| | ) | |
| CITY OF SARALAND, ALABAMA; OFFICER GREGORY E. CULLY, Badge No. 198, in his individual and official capacity; and OFFICER C. LITTLE, K-9 Handler, in her individual and official capacity, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## PRELIMINARY STATEMENT

**COMES NOW**, Plaintiffs Joel Chapa, Dalila Elizabeth Chapa, Javier Rocha, Joel Chapa as next friend and parent of Sofia Elizabeth Chapa, a minor, Joel Chapa as next friend and parent of Camila Chapa, a minor, and Dalila Elizabeth Chapa as next friend of Raquel Rocha, a minor, by and through undersigned counsel, and bring

this civil rights action arising from an unlawful, discriminatory (race and national origin), pretextual traffic stop conducted by officers of the Saraland Police Department on June 17, 2024, on Interstate 65 South at or near Mile Marker 16, within the city limits of Saraland, Alabama. Defendants unlawfully stopped, detained, searched, and seized Plaintiffs and their family without reasonable suspicion or probable cause. At the time of the stop, Plaintiff Joel Chapa was traveling with his pregnant wife, Dalila Elizabeth Chapa; his father-in-law, Javier Rocha, who was driving; his two-year-old daughter, Sofia Elizabeth Chapa, secured in her car seat; his wife's thirteen-year-old sister, Raquel Rocha, seated in the third-row right seat; and his wife was pregnant with their daughter Camila Chapa, now one year old. In total, five (5) occupants, all U.S. Citizens including a pregnant woman, a thirteen-year-old minor, and a two-year-old child in a car seat, were subjected to a prolonged and coercive roadside detention without lawful justification.

Defendants lacked probable cause or reasonable suspicion to initiate the stop, and no traffic violation in fact occurred. After Mr. Chapa lawfully declined consent to search, Defendants unlawfully extended the detention by deploying a K-9 unit without independent reasonable suspicion, in direct violation of *Rodriguez v. United States*, 575 U.S. 348 (2015). No drugs, contraband, or evidence of any criminal activity were found anywhere in the vehicle or on any occupant. Despite this,

Defendants seized $25,378.00 in lawful U.S. currency, documentary proof of the lawful source of which was presented to officers at the scene, three (3) cell phones, and a Microsoft tablet with charger, all without a warrant, consent, or any valid legal justification. The seized currency was never tested for controlled substances; it was transported to a bank and converted to a cashier's check.

The stop was driven by racial and ethnic profiling. Defendants assumed, based solely on Plaintiffs' Hispanic surnames and appearance, that they were drug traffickers or cartel-connected individuals. Defendants interrogated the driver about illegal drug proceeds and questioned Mr. Chapa about travel to Mexico and money transfers to Mexico, none of which had any factual basis. The conduct of Defendants inflicted severe physical injuries, pregnancy complications, psychological trauma to the minor children, lasting reputational harm, profound business losses, and an ongoing deprivation of the right to free travel. Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1981 and 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, as well as Alabama state law, to redress these grievous violations of their constitutional rights.

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4), as this action arises under 42 U.S.C. §§ 1981, 1983, and 1988, and

the Fourth and Fourteenth Amendments to the United States Constitution. This Court

has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C.

§ 1367.

2.      Venue is proper in the Southern District of Alabama pursuant to 28 U.S.C. §

1391(b), as the acts and omissions giving rise to all claims occurred in Saraland,

Alabama, which lies within this judicial district and division.

3.      Plaintiffs' counsel, Martin Weinberg, timely filed a Notice of Claim against

the City of Saraland on or about February 5, 2025, pursuant to Ala. Code § 6-5-20,

within six (6) months of the incident. The City of Saraland failed to resolve the

dispute within the 90-day statutory period. All conditions precedent to the

commencement of this action have been satisfied or are otherwise excused.

## II. PARTIES

4.      Plaintiff JOEL CHAPA is a United States citizen of Hispanic descent, residing

at 2106 Cedro Drive, San Juan, Texas 78589. He is a former Texas Department of

Public Safety Trooper who served for five and a half years and came close to

achieving the rank of Texas Ranger, a business owner, and an entrepreneur. His law

enforcement background provides him with direct personal knowledge of

constitutional policing standards. He was the front-seat passenger in the vehicle at

the time of the traffic stop.

5.      Plaintiff DALILA ELIZABETH CHAPA (hereinafter "Mrs. Chapa") is the wife of Joel Chapa and a United States citizen, residing at 2106 Cedro Drive, San Juan, Texas 78589. She was pregnant at the time of the incident, carrying the couple's daughter Camila Chapa, now one year old. She suffered physical injuries, including pregnancy complications, and severe emotional distress as a direct result of Defendants' unlawful conduct.

6.      Plaintiff JAVIER ROCHA is the father-in-law of Joel Chapa and a United States citizen, residing at 6903 Ozuna St., Pharr, Texas 78577. He is a professional commercial truck driver who holds and maintains a CDL. He was the driver of the vehicle at the time of the stop and was directly subjected to the unlawful traffic stop, prolonged detention, search, and discriminatory interrogation conducted by Defendants.

7.      Plaintiff JOEL CHAPA, as next friend and parent, brings this action on behalf of SOFIA ELIZABETH CHAPA, a minor child who was approximately two (2) years of age at the time of the incident and was secured in her car seat in the second-row right seat. Sofia was present on the roadside of busy Interstate 65 South throughout the prolonged unlawful detention and suffered psychological harm and distress as a result.

8.      Plaintiff JOEL CHAPA, as next friend and parent, brings this action on behalf of CAMILA CHAPA, a minor. Camila's mother, Dalila Elizabeth Chapa, was

pregnant with Camila at the time of the incident. Dalila suffered pregnancy complications caused by the physical and emotional trauma directly inflicted by Defendants' unlawful conduct during the stop. Camila Chapa was born approximately nine months after the incident and is now one year old.

9.    Plaintiff DALILA ELIZABETH CHAPA, as next friend, brings this action on behalf of RAQUEL ROCHA, a minor who is the thirteen (13)-year-old sister of Dalila Elizabeth Chapa and the sister-in-law of Joel Chapa. Raquel Rocha was seated in the third-row right seat of the vehicle at the time of the incident and was subjected to the full duration of the unlawful roadside detention. As a direct and proximate result of Defendants' unlawful conduct, Raquel Rocha suffered emotional distress and ongoing physical symptoms, including hair loss that has persisted since the date of the incident on June 17, 2024. Raquel Rocha resides with her family in Texas.

10.    Defendant CITY OF SARALAND, ALABAMA is a municipal corporation organized and existing under the laws of the State of Alabama. The City operates and is responsible for the Saraland Police Department, including the hiring, training, supervision, discipline, and oversight of its police officers, and the establishment and enforcement of its law enforcement policies and practices. The City is sued pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for maintaining and/or ratifying the unconstitutional policies, customs, and practices that caused the violations complained of herein.

11.    Defendant OFFICER GREGORY E. CULLY (Badge No. 198, Officer ID: 198, Agency ORI: AL0020500) is, upon information and belief, a police officer employed by the Saraland Police Department. Officer Cully initiated and conducted the traffic stop on June 17, 2024, issued the Alabama Traffic Warning to Javier Rocha, conducted the unlawful Terry frisk of Mr. Chapa and seized his cell phone from his pocket, and participated in the seizure of Plaintiffs' lawful currency and personal property. He is also identified as the Reporting Officer and Supervisor on the Alabama Uniform Incident/Offense Report, Case No. 2406170005. He is sued in both his individual and official capacities.

12.    Defendant OFFICER C. LITTLE is, upon information and belief, a female police officer and K-9 handler employed by the Saraland Police Department who was called to the scene after Mr. Chapa refused consent to search. While Officer Cully spoke with driver Javier Rocha roadside, Officer Little approached the front passenger window and requested consent to search the vehicle. Mr. Chapa declined, stating he did not want his pregnant wife and young daughter standing on the side of the road in the heat, and that it was his constitutional right. Officer Little stated that the occupants would need to exit regardless, and that she would deploy her K-9 if consent was not given. She then made all occupants exit the vehicle and conducted a K-9 exterior sniff without independent reasonable suspicion, unlawfully extending the traffic stop. She also conducted racially discriminatory questioning of Plaintiffs

regarding travel to Mexico and money transfers to Mexico. She is sued in both her individual and official capacities.

### III. FACTUAL ALLEGATIONS

### A. Background of Plaintiff Joel Chapa

13.    Joel Chapa is a United States citizen of Hispanic descent and a devoted family man. He served as a Texas Department of Public Safety (DPS) Trooper for approximately five and a half years and came close to achieving the elite rank of Texas Ranger, having attained the level of Trooper II on track toward Trooper III. Following his law enforcement career, Mr. Chapa established himself as a successful business owner and entrepreneur, operating a welding business that generates between $500,000 and $1,000,000 or more per month in revenue. His background in law enforcement provided him with firsthand knowledge of lawful police procedures, including the constitutional standards governing traffic stops, frisks, searches, and seizures. This background informed his understanding at the scene that the conduct of Defendants on June 17, 2024 was unlawful.

14.    Mr. Chapa has no criminal history and has never been convicted of any criminal offense. He and his entire family are law-abiding United States citizens. Being investigated, detained, searched, publicly labeled as a suspected drug

trafficker, and subjected to federal civil forfeiture proceedings has caused him profound personal, professional, and dignitary harm.

### B. Lawful Source of Funds and Purpose of Travel

15. The Chapa family was traveling from South Carolina back to San Juan, Texas following a visit to family and an inspection of a 1984 Chevrolet 1500 Regular Cab Short Bed pickup truck listed for $25,500 on Facebook Marketplace by seller Hannah Merck of Pendleton, South Carolina. Upon inspecting the vehicle in person, Mr. Chapa discovered undisclosed corrosion and mechanical issues not apparent from the online listing or prior communications via Facebook Messenger, and he accordingly decided not to purchase the vehicle. The family was returning home from entirely lawful personal and commercial travel at the time of the stop.

16. On June 13, 2024, four (4) days before the traffic stop, Mr. Chapa closed two personal savings accounts at Rally Credit Union, Northgate branch, P.O. Box 81349, Corpus Christi, Texas 78414, and withdrew a total of $39,678.49 in cash. Specifically:

   a. Account No. ending in 1641 (Joel Chapa - Liberty) was closed with a withdrawal of $10.03 plus $0.01 interest;

   b. Account No. ending in 1533 (Joel Chapa - Share) was closed with a withdrawal of $39,568.46 plus $34.61 interest; and

   c. a cashier's check for $39,678.49 was issued on Account No. ending in 6107.

These transactions are documented by an official Rally Credit Union receipt dated June 13, 2024 at 3:52 p.m., Teller No. 440506, Transaction No. 489204, Cashbox No. 1524.

17.   A second official Rally Credit Union receipt, dated June 17, 2024 at 2:47 p.m., the same date as the traffic stop, reflects the cash disbursement from the cashier's check: Teller No. 193944, Transaction No. 489208, Cashbox No. 1509, Account No. ending in 6107. The cash was disbursed in denominations including one-hundred dollar bills totaling $39,600.00, for a combined total of $39,678.49. The cash disbursement receipt is dated the same day as the stop and constitutes irrefutable documentary evidence of the lawful origin of the currency.

18.   Mr. Chapa presented both Rally Credit Union receipts to Defendants at the scene during the traffic stop as direct documentary proof of the lawful source of the currency in the vehicle. Defendants acknowledged receiving this documentation but chose to ignore it entirely. No effort was made by Defendants to verify the receipts, contact Rally Credit Union, or otherwise investigate the legitimacy of the funds before seizing them.

19.   Mr. Chapa carried the currency in bank envelopes stored inside his personal backpack, which was located in the open second-row area of the vehicle between the captain's chairs, plainly visible and not concealed in any manner. Officer Little

nonetheless described the money as "hidden", a characterization that is demonstrably false and inconsistent with the actual circumstances.

20.     At the time of the stop, the Chapa family vehicle, a 2024 Chevrolet Tahoe, white in color, bearing Texas license plate TNF7899, registered to Joel Chapa, 2106 Cedro Dr., San Juan, Texas 78589, carried five (5) occupants:

a.  Joel Chapa, front passenger;

b.  Dalila Elizabeth Chapa, pregnant wife, second-row left passenger;

c.  Javier Rocha, father-in-law and driver, residing at 6903 Ozuna St., Pharr, Texas 78577;

d.  Sofia Elizabeth Chapa, approximately two (2) years old, secured in her car seat in the second-row right seat; and

e.  Raquel Rocha, Mrs. Chapa's thirteen (13)-year-old sister, seated in the third-row right seat.

### C. The Pretextual Traffic Stop

21.     Javier Rocha is a professional commercial truck driver who holds a CDL and takes the maintenance of his license and safe driving record seriously. He had rested during the morning portion of the drive, allowing Mr. Chapa to drive. Approximately one hour before reaching Saraland, the family stopped and switched drivers, with Mr. Rocha taking the wheel while Mr. Chapa moved to the front passenger seat. Mr. Rocha was well-rested at the time of the stop.

22.   At approximately 11:35-11:36 a.m. on June 17, 2024, Defendant Officer Gregory E. Cully, Badge No. 198, of the Saraland Police Department, initiated a traffic stop of Plaintiffs' vehicle at or near South Interstate 65, Mile Marker 16, within the city limits of Saraland, Alabama 36571. Officer Cully made a passenger-side approach and stated the reason for the stop, requesting both driver Javier Rocha's license and registration and Joel Chapa's driver's license.

23.   The stated basis for the stop was an alleged "Improper Lane Usage." Defendant Cully issued an Alabama Traffic Warning (Form ATW, Rev. 6/03) to driver Javier Rocha for this alleged infraction. The warning which is not a citation or charge was the only documentation generated to justify the initiation of the stop. The warning identifies Officer G.E. Cully, Officer ID 198, Agency ORI AL0020500, as the issuing officer.

24.   Plaintiffs categorically deny that any improper lane change occurred. Javier Rocha, an experienced professional commercial driver, did not leave his lane of travel in any unlawful manner. Officer Cully also questioned Mr. Rocha about whether he was tired or falling asleep, to which Mr. Rocha firmly responded that he was not. There was no objective, articulable basis, no traffic violation, no criminal activity, no reasonable suspicion that would have justified the initiation of the stop, its escalation beyond issuing a routine warning, or the prolonged detention of all five occupants that followed.

25.    Rather than handing Mr. Rocha the traffic warning and concluding the stop, Officer Cully returned from his patrol unit and asked Mr. Rocha to step out of the vehicle, directing him to stand on the roadside grass between the vehicles. This tactic, common in interdiction stops, is designed to separate driver and passengers in order to ask repetitive questions and compare responses for inconsistencies. It served no lawful traffic enforcement purpose after all licenses, registration, and occupants' identification had been confirmed clear.

26.    The Alabama Uniform Incident/Offense Report (Saraland Police Department, ORI No. AL0020500, Agency Case No. 2406170005), completed by Officer Gregory E. Cully (Reporting Officer ID: 198, Supervisor Approval ID: 198), documents the incident as occurring on June 17, 2024 at 11:36 a.m. at "South I-65 @ 16mm, Saraland, AL 36571." The type of incident is listed as "Investigation," not a specific criminal offense. The Property section of the report records the seizure of "25,378 U.S. Currency" (Property Code: 20 - Money; Loss Code: C - Confiscated/Seized; Quantity: 1 unit; Estimated Domestic Value: $25,378.00). The vehicle is classified as "Suspect's Vehicle." The case was marked as Inactive and Closed as of the report date of June 18, 2024.

27.    Critically, no arrest was made of any occupant of the vehicle. No criminal charges were filed against any Plaintiff arising from the June 17, 2024 stop. No contraband of any kind was found in the vehicle. The case was administratively

closed the following day, yet the seized currency was not returned, and instead was converted into a cashier's check and referred for federal civil forfeiture proceedings.

### D. Unlawful Search, K-9 Deployment, and Seizure of Property

28.   While Officer Cully spoke with Javier Rocha roadside, Defendant Officer Little approached the front passenger window and engaged Mr. Chapa in conversation. Mr. Chapa, drawing on his experience as a former Texas DPS Trooper, recognized the nature of the interdiction stop. He informed Officer Little that he was a former Texas State Trooper. Officer Little asked where the family was coming from and going to, whether they had anything illegal in the car, and whether they had large amounts of money. Mr. Chapa replied that they did not have "large" amounts of money, a response he considered accurate given the subjective nature of the question and the fact that in the context of his business operations, $25,000 is not a large amount. Officer Little then requested consent to search the vehicle.

29.   Mr. Chapa exercised his constitutional right under the Fourth Amendment and declined to provide consent. He explained that he did not want his pregnant wife and young daughter standing on the roadside and that it was his right to decline. Officer Little responded that the occupants would need to exit regardless, as she was going to run her K-9 whether or not consent was given. The family was ordered out of the vehicle.

30.     The deployment of the K-9 unit after Mr. Chapa refused consent and without reasonable suspicion of criminal activity independent of the traffic stop itself constituted an unconstitutional extension of the traffic stop. Once officers confirmed that the driver's license, registration, and all occupants' identification were clear, the lawful purpose of the traffic stop was exhausted, and the stop should have concluded. The further detention of Plaintiffs to await and conduct a K-9 sniff was unlawful. *Rodriguez v. United States*, 575 U.S. 348 (2015).

31.     Officer Little deployed her K-9 to conduct an exterior sniff of Plaintiffs' vehicle and subsequently claimed the K-9 alerted. No drugs, narcotics, weapons, or contraband of any kind were discovered inside the vehicle, on any occupant, or anywhere associated with Plaintiffs. The search produced absolutely no evidence of criminal activity.

32.     Following the K-9 alert, Officer Little asked Mr. Chapa whether she would find anything. Concerned that undisclosed currency could be mischaracterized or taken without documentation, and wishing the disclosure to be made on video record, Mr. Chapa voluntarily disclosed the existence of the money and directed Officer Little to its location inside his personal backpack in the vehicle's second-row area. The money was contained in bank envelopes, in a standard zippered compartment of the backpack, which was plainly visible in the cabin not hidden,

secured in a compartment, wrapped in cellophane, or concealed in any manner consistent with how drug trafficking proceeds are typically stored.

33.    Despite the total absence of contraband and despite Mr. Chapa's presentation of Rally Credit Union bank receipts proving the lawful, documented source of the currency, Defendants seized $25,378.00 in U.S. currency based solely upon the alleged K-9 alert. At no point did Defendants chemically test the currency for the presence of controlled substances. Instead, Defendants transported the seized cash to a financial institution and converted it into a cashier's check in the amount of $25,378.00. This practice is inconsistent with legitimate evidence-preservation procedure and instead reflects the use of civil asset forfeiture as a revenue-generating mechanism.

34.    As federal law enforcement interdiction training has long recognized, including programs such as Desert Snow, with which Mr. Chapa is familiar from his own law enforcement career, approximately 90-95% of United States currency in general circulation has at some point been in contact with trace amounts of controlled substances. Accordingly, a K-9 alert to currency, standing alone and without corroborating evidence of criminal activity, does not constitute probable cause sufficient to support a seizure under the Fourth Amendment.

35.    During the stop, Officer Cully and Officer Little were overheard by Mr. Chapa stating to one another that the occupants' story "checks out" and "makes sense."

Notwithstanding this admission that the investigation had produced no actionable evidence, Officer Little pushed for the seizure of the currency. Defendants continued and escalated the seizure of Plaintiffs' property over the objections of both officers' own assessment that the family's account was credible.

36.    During the stop, Defendant Cully subjected Mr. Chapa to a pat-down frisk purportedly authorized by *Terry v. Ohio*, 392 U.S. 1 (1968). In the course of this frisk, and without having felt a weapon or any object reasonably identifiable as a weapon, Defendant Cully reached into Mr. Chapa's pocket and physically removed his cell phone. A Terry frisk authorizes only an external pat-down of outer clothing for the limited purpose of detecting weapons; it does not authorize officers to reach into pockets absent the feel of a weapon. *Terry v. Ohio*, 392 U.S. 1 (1968); *Minn. v. Dickerson*, 508 U.S. 366, 378 (1993). A seizure of a cell phone also requires probable cause or at least reasonable suspicion, neither of which existed here. *United States v. Babcock*, 924 F.3d 1180, 1188 (11th Cir. 2019).

37.    In addition to Mr. Chapa's cell phone, Defendants seized two (2) additional cell phones belonging to other occupants of the vehicle, as well as a Microsoft tablet with its charger, all without a warrant, without consent, and without any applicable exception to the Fourth Amendment's warrant requirement. Again, the seizure of these devices required probable cause or reasonable suspicion of a crime, neither of which existed here. *Babcock*, 924 F.3d at 1180. When one of Mr. Chapa's phones

rang during the seizure and Officer Cully saw the caller identified as "Pedro Chapa" (Mr. Chapa's brother), Cully made a dismissive, ethnically charged remark, which Mr. Chapa reasonably interpreted as a derogatory reference to the caller's Hispanic name.

38.    Following the roadside detention, Plaintiffs were escorted to an HSI office. Mr. Chapa's family, including Javier Rocha, was permitted to remain in the vehicle. Mr. Chapa was taken to an interior room, where HSI Agent Jason Greene and a second HSI agent attempted to question him. Mr. Chapa declined to answer further questions, stating that he had cooperated fully on the roadside providing documentation of the money's source and that further cooperation had not been to his benefit. The second HSI agent raised his voice at Mr. Chapa for stating this position. Mr. Chapa was informed that he was free to go.

39.    Mr. Chapa refused to leave without a seizure form listing the exact amount of currency taken. After Defendants initially resisted providing the precise figure, Mr. Chapa waited approximately two additional hours while the currency was transported to a bank and converted into a cashier's check. Only then was an updated seizure receipt issued reflecting the exact amount of $25,378.00. Notably, Mr. Chapa's willingness to wait additional hours after being told he was free to go in order to obtain precise documentation of the amount taken is wholly inconsistent with the conduct of a person engaged in criminal activity.

40. Officer Cully subsequently approached Mr. Chapa in the parking lot and returned his lawfully owned Sig Sauer P365 (9mm) firearm, which had been removed from the vehicle during the search. He had forgotten to do so; had Mr. Chapa left two hours earlier, he would have departed without his legal firearm. Additionally, the magazine to the firearm was initially not returned; Cully retrieved and returned it only after Mr. Chapa specifically requested it.

41. Two (2) Department of Homeland Security Custody Receipts for Seized Property and Evidence (DHS Form 6051S, Handbook 5200-09, dated June 17, 2024) bearing sequential serial numbers 8665262 and 8665263 document and confirm the seizure of Plaintiffs' property. Both receipts identify Joel Chapa, 2106 Cedro Dr., San Juan, Texas 78589, as the individual from whom the property was seized. The Seizing Officer is identified on both receipts as Jason Greene, who signed the receipts on June 17, 2024.

42. On July 1, 2024, U.S. Customs and Border Protection (CBP) issued a formal Notice of Seizure and Information to Claimants (CAFRA Form, Case Number 2024190100007401) to Joel Chapa at 2106 Cedro Dr., San Juan, TX 78589, via Certified Mail, USPS Tracking No. 7020 1810 0001 0723 4857, from the FPF Office, 150 N. Royal St., RM 121, Mobile, Alabama 36602, signed by Murray Paul Mitchell Jr., Fines, Penalties and Forfeitures Officer. The CAFRA notice confirmed that ICE seized "1 EA U.S. Currency converted to cashier's check ($25,378.00)" on

June 17, 2024, in Saraland, Alabama. The notice asserted the following federal forfeiture statutes as grounds for the seizure:

a. 21 U.S.C. §§ 881(a)(6) and 881(b) - Proceeds Traceable to Controlled Substances;

b. 18 U.S.C. § 981(a)(1)(A), 18 U.S.C. § 1956(c)(7)(A), 18 U.S.C. § 1961(1)(D), and 21 U.S.C. § 846 - Conspiracy to Commit Violation;

c. 18 U.S.C. § 981(a)(1)(A), 18 U.S.C. § 1956(c)(7)(A), 18 U.S.C. § 1961(1)(D), and 21 U.S.C. § 841 - Manufacturing, Distributing, or Dispensing Controlled Substances;

d. 18 U.S.C. § 981(a)(1)(A), 18 U.S.C. § 1956(c)(7)(A), 18 U.S.C. § 1961(1)(D), and 21 U.S.C. § 959 - Possession, Manufacture, or Distribution of Controlled Substance; and

e. 31 U.S.C. §§ 5332(c) and 5332(a) - Concealed Bulk Cash/Import.

43. The invocation of these broad federal forfeiture statutes, in the complete absence of any criminal charges, any arrest, any evidence of drug trafficking, or any contraband, further confirms the pretextual and constitutionally infirm nature of the stop and seizure. Mr. Chapa was required to retain legal counsel, incur attorney's fees, and engage in CAFRA forfeiture proceedings to contest the unlawful taking of his lawful property. Attorney Whitney Polson of Birmingham, Alabama was retained to handle the forfeiture claim and successfully obtained the return of the

seized currency and electronic devices in October 2024, after the U.S. Assistant Attorney declined to prosecute, at which point the government immediately released all property. Mr. Chapa also retained two attorneys in New York for guidance, incurring approximately $9,000 in total attorney's fees across the forfeiture proceedings before being directed to Mr. Polson. Mr. Polson subsequently referred Mr. Chapa to attorney Martin Weinberg to pursue the constitutional claims against the City of Saraland and its officers.

### E. Discriminatory Conduct and Racial Profiling

44.    Upon information and belief, Defendants targeted Plaintiffs because of their Hispanic ethnicity, perceived national origin, and/or race. The pretextual traffic warning, the unlawful extension of the stop following refusal of consent, the escalating and racially charged interrogation, the K-9 deployment, and the ultimate seizure of all lawful property collectively demonstrate that racial and ethnic discrimination was a substantial if not the primary motivating factor in Defendants' conduct.

45.    During the stop, Defendants repeatedly interrogated driver Javier Rocha, asking: "How much money were you supposed to get for this trip from that cash?" This question was asked without any factual predicate and falsely implied that the family members were engaged in an illegal drug-proceeds splitting scheme. Although he was not required to prove his innocence, Mr. Rocha cooperatively and

truthfully explained that the money did not belong to him, that it was Joel Chapa's lawful money, and that it was intended for the purchase of a vehicle, a representation supported by the bank receipts that had already been shown to Defendants.

46.    Defendant Officer Little questioned Mr. Chapa about how often he traveled to Mexico and how frequently he sent money to Mexico. Mr. Chapa does not send money to Mexico. These questions were based entirely on ethnic stereotyping, an assumption that because Plaintiffs had Hispanic surnames and appearance, they must have ties to Mexico and, by extension, to drug trafficking, money laundering, or cartel-related activity. At no point did any Plaintiff volunteer their national background or ethnicity. Being of Hispanic descent is not, and has never been, evidence of any criminal conduct.

47.    When Mr. Chapa explained to Officer Little that his business regularly generates between $500,000 and $1,000,000 or more per month in revenue, and that $25,000 is not a large amount relative to those operations, Officer Little responded only that she now understood why Mr. Chapa had left his state employment because he had found a "lucrative" job. This dismissive response reflects Defendants' inability or unwillingness to accept a legitimate explanation for the funds and further evidences their predetermined and discriminatory conclusion.

48.    When Officer Cully observed that one of Mr. Chapa's confiscated phones was ringing with a call from "Pedro Chapa" (his brother), Cully made a remark - "Of

course", in a tone Mr. Chapa reasonably interpreted as a derogatory reference to the caller's Hispanic name. Cully then questioned whether the business was co-owned by Mr. Chapa's brother, and when told it was a welding business, questioned how Mr. Chapa could own a welding business without being a welder. Mr. Chapa explained that a business owner coordinates professionals who execute specialized tasks, just as a restaurant owner need not know how to cook. These interrogation tactics were not directed at any lawful enforcement objective but instead reflected Defendants' discriminatory assumptions about Hispanic-owned businesses.

49.    Defendants' conduct defamed and implicitly branded Plaintiffs and in particular Joel Chapa, a former law enforcement officer as drug traffickers or cartel-connected criminals based solely on their ethnicity and the fact that they were traveling with a significant amount of lawfully obtained cash. This discriminatory treatment caused immediate harm, lasting stigma, and reputational injury to all Plaintiffs.

50.    Upon information and belief, other similarly situated non-Hispanic travelers carrying equivalent amounts of currency through Saraland, Alabama were not subjected to the same level of scrutiny, prolonged detention, K-9 deployment, or property seizure, confirming the discriminatory nature of Defendants' conduct toward Plaintiffs.

**F. Physical, Psychological, and Financial Harm to Plaintiffs**

51.    Mrs. Dalila Elizabeth Chapa was pregnant at the time of the stop. She was compelled to stand and remain on the roadside of busy Interstate 65 South in the Alabama summer heat, along with her approximately two-year-old daughter and her thirteen-year-old sister, Raquel Rocha, throughout the prolonged and unlawful detention. At one point she and her daughter Sofia were placed inside the back seat of the patrol unit, where conditions were cramped and uncomfortable for a pregnant woman managing a distressed toddler. The physical stress, emotional trauma, and mental anguish caused by the encounter directly caused complications in her pregnancy. Her treating physician has confirmed the causal connection between the June 17, 2024 stop and the subsequent pregnancy complications, and has agreed to provide supporting medical documentation.

52.    Sofia Elizabeth Chapa, then approximately two (2) years old, was present on the interstate roadside throughout the prolonged, coercive, and constitutionally unlawful detention. Her exposure to the frightening and dangerous circumstances of the stop including the presence of armed law enforcement officers, a police K-9, and the detention of her parents and grandfather caused her psychological harm and distress.

53.    Raquel Rocha, the thirteen (13)-year-old sister of Dalila Elizabeth Chapa, was seated in the third-row right seat of the vehicle at the time of the stop. She was subjected to the full duration of the unlawful roadside detention and suffered

emotional distress as a result. Raquel has experienced ongoing physical symptoms, including hair loss, which have persisted since the date of the incident.

54.   Camila Chapa was in utero at the time of the incident. The physical and psychological trauma suffered by her mother, Dalila Elizabeth Chapa, during and after the stop proximately caused physical harm and injury to Camila in utero and contributed to the pregnancy complications documented by Mrs. Chapa's treating physician.

55.   The seizure of Mr. Chapa's cell phones and Microsoft tablet deprived him of business-critical communications, client contact information, contracts, and proprietary data necessary to operate his business. As a direct result, Mr. Chapa was unable to properly manage client relationships and business commitments, lost existing contracts, and suffered significant and quantifiable financial damages. His business operations have been materially and adversely affected.

56.   The prolonged detainment and the seizure of Mr. Chapa's cell phones and Microsoft tablet and being treated as a criminal suspect in the presence of his wife, father-in-law, daughters, and his wife's thirteen-year-old sister eviscerated his sense of privacy and irreparably damaged the dignity he has established over the course of his seven years of marriage, his five and a half year career in law enforcement, and his career as an entrepreneur.

57.    Mr. Chapa has suffered profound reputational harm and stigma. As a former Texas DPS Trooper who was subjected to extended detainment, interrogation, and federal civil forfeiture proceedings that were pretextual and discriminatory without a shred of evidence of any wrongdoing, Mr. Chapa has experienced lasting dignitary injury and the taint of being publicly associated with criminal drug activity. This stigma has affected both his personal standing and his professional reputation.

58.    All Plaintiffs who were within the zone of danger suffered severe emotional distress, mental anguish, anxiety, fear, and loss of enjoyment of life as a direct and proximate result of Defendants' unlawful conduct. Mr. Chapa and his family were humiliated in public, detained on the side of a major highway, separated from their property, and treated as criminals without cause.

### G. Continued Targeting at U.S. Border - August 18, 2024

59.    On or about August 18, 2024, Mr. Chapa and his family returned to the United States from a vacation in Mexico. Upon re-entry at a U.S. port of entry, Mr. Chapa was immediately singled out from other returning travelers and interrogated specifically about his occupation and whether he was carrying large amounts of currency, drugs, or weapons. His entire family was directed to secondary inspection, where all luggage and their vehicle were thoroughly searched. No contraband or unlawful items were found.

60.    During the secondary inspection, border officials asked whether Mr. Chapa's parents had any criminal record. Neither of Mr. Chapa's parents has any criminal history. The family was ultimately released without any charge, citation, or adverse finding. The targeted interrogation and search of Mr. Chapa and his family upon re-entry to the United States is consistent with Mr. Chapa having been unlawfully flagged in federal law enforcement and border security databases as a result of the June 17, 2024 Saraland stop and the subsequent federal civil forfeiture proceedings initiated by Defendants.

61.    As a result of being unlawfully flagged in government databases, Mr. Chapa and his family are now deprived of the ability to exercise their constitutional right to free and unencumbered travel within the United States and abroad. Mr. Chapa has stated that he does not feel free to travel by car or by plane without being subjected to discriminatory targeting and harassment. This continuing deprivation of liberty and freedom of movement is an ongoing constitutional injury that was proximately caused by Defendants' initial unlawful conduct on June 17, 2024.

**H. City of Saraland - Policy, Custom, and Failure to Train and Supervise**

62.    Upon information and belief, the City of Saraland, through its Police Department, has established, maintained, or acquiesced in a policy, custom, or widespread practice of:

a. initiating pretextual traffic stops and conducting prolonged detentions targeting Hispanic and minority motorists traveling through Saraland without constitutionally sufficient grounds;

b. deploying K-9 units as a pretext for vehicle searches following a motorist's lawful refusal of consent, without independent reasonable suspicion;

c. using civil asset forfeiture as a revenue-generating mechanism rather than as a legitimate tool tied to actual evidence of criminal activity; and

d. applying discriminatory and racially motivated law enforcement authority against individuals of Hispanic descent.

63.    The Notice of Claim filed by Plaintiffs' counsel on February 5, 2025 specifically informed the City of Saraland that the officers' conduct "is part of a pattern and practice in Saraland whereas officers are trained to make unlawful traffic stops in hopes that they will be able to initiate seizure of assets and commence forfeiture actions." Despite the City's own stated policy against pretextual stops, the City has taken no corrective action against the Defendant officers and has not remedied the constitutional violations suffered by Plaintiffs.

64.    The City of Saraland has failed to adequately train its police officers with respect to:

a. the constitutional requirements for initiating a traffic stop based on genuine probable cause or reasonable articulable suspicion;

b. the prohibition on prolonging a traffic stop beyond its lawful purpose, as required by *Rodriguez v. United States*, 575 U.S. 348 (2015);

c. the proper and limited scope of a Terry frisk, including the prohibition on reaching into pockets absent the feel of a weapon;

d. the constitutional standards governing the deployment of K-9 units following a refusal of consent;

e. the warrant requirement applicable to the seizure of electronic devices, as established by *Riley v. California*, 573 U.S. 373 (2014); and

f. the prohibition against racial profiling and ethnic discrimination under the Fourth and Fourteenth Amendments and 42 U.S.C. §§ 1981 and 1983.

65. The City of Saraland ratified and adopted the unconstitutional conduct of its Defendant officers by:

a. closing the incident report as "Inactive" the following day, June 18, 2024, without any remedial action, investigation, or discipline of the officers involved;

b. facilitating the referral of the seized currency to ICE and U.S. CBP for federal civil forfeiture proceedings, notwithstanding the complete absence of any criminal charge or finding;

c. denying Plaintiffs' public records request for body camera and dash cam footage, and refusing to provide available records as requested; and

d.  failing to respond appropriately to the Notice of Claim filed February 5, 2025.

These acts of ratification constitute an adoption of the officers' unconstitutional conduct as a matter of official municipal policy under Monell.

## IV. CAUSES OF ACTION

### Count I

**Unlawful Seizure: Pretextual Traffic Stop**
(42 U.S.C. § 1983 - Fourth and Fourteenth Amendments)
*(Against All Defendants)*

66.  Plaintiffs reassert and incorporate Paragraphs 1-65 as if fully restated herein.

67.  The Fourth Amendment to the United States Constitution, as applied to state actors through the Fourteenth Amendment, prohibits unreasonable seizures of persons. A traffic stop constitutes a seizure. *Delaware v. Prouse*, 440 U.S. 648 (1979). A traffic stop that lacks genuine probable cause or reasonable articulable suspicion and is instead initiated as a pretext for a race-based investigation violates the Fourth Amendment. See *Whren v. United States*, 517 U.S. 806 (1996); *United States v. Sokolow*, 490 U.S. 1 (1989).

68.  Defendants initiated and conducted the traffic stop of Plaintiffs' vehicle without a legitimate, non-pretextual basis. No traffic violation occurred. The stop

was pretextual and was initiated based on Plaintiffs' race, ethnicity, and perceived national origin in violation of the Fourth and Fourteenth Amendments.

69.    Defendant City of Saraland is independently liable for this violation under Monell as a result of the official policy, custom, and failure to train described herein.

70.    As a direct and proximate result of this violation, Plaintiffs suffered all of the damages described herein.

## Count II

**Unlawful Seizure: Excessive Force**
(42 U.S.C. § 1983 - Fourth Amendment)
*(Against Officers Cully and Little, and City of Saraland)*

71.    Plaintiffs reassert and incorporate Paragraphs 1-65 as if fully restated herein.

72.    The Fourth Amendment prohibits law enforcement officers from using objectively unreasonable force in the course of a seizure. *Graham v. Connor*, 490 U.S. 386 (1989). The reasonableness of the force must be assessed under the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses a threat, and whether the subject is resisting.

73.    Defendants' conduct during the stop was objectively unreasonable under the totality of the circumstances. No crime had occurred. No suspect was armed or resisting. Nonetheless, Defendants:

a. subjected a pregnant woman, a thirteen-year-old minor, and a two-year-old child in a car seat to a prolonged detention on the roadside of a busy interstate highway in summer heat;

b. physically restrained occupants;

c. reached into Mr. Chapa's pocket and forcibly removed his cell phone without legal justification; and

d. deployed a police K-9 in a coercive manner to compel submission to an unlawful search.

The cumulative physical and psychological force employed was grossly disproportionate to any legitimate law enforcement objective.

74. As a direct and proximate result, Mrs. Chapa suffered physical injury including pregnancy complications; Raquel Rocha suffered emotional distress and ongoing physical symptoms including hair loss; Mr. Chapa suffered physical and dignitary harm; and all Plaintiffs suffered severe emotional distress, fear, and mental anguish.

## COUNT III

### Unlawful Search and Seizure of Property
(42 U.S.C. § 1983 - Fourth Amendment)
*(Against All Defendants)*

75. Plaintiffs reassert and incorporate Paragraphs 1-65 as if fully restated herein.

76.    The Fourth Amendment protects against unreasonable searches and seizures of property. Warrantless searches and seizures are per se unreasonable unless a recognized exception applies. The Government bears the burden of establishing the applicability of any exception.

77.    Defendants searched Plaintiffs' vehicle without consent, a warrant, probable cause, or any valid exception to the Fourth Amendment's warrant requirement. The deployment of the K-9 unit after Mr. Chapa refused consent and without independent reasonable suspicion of criminal activity unlawfully extended the traffic stop beyond its constitutionally permissible duration, in direct violation of *Rodriguez v. United States*, 575 U.S. 348 (2015).

78.    Defendants seized $25,378.00 in lawful U.S. currency without probable cause to believe the funds constituted evidence of or proceeds from any crime. The presentation of Rally Credit Union bank receipts at the scene which Defendants ignored established the lawful, documented source of the funds. No contraband was found. The currency was never tested for controlled substances. A K-9 alert to currency, standing alone, without corroborating evidence, does not constitute probable cause.

79.    Defendants seized three (3) cell phones and a Microsoft tablet belonging to Plaintiffs without a warrant, without consent, and without any applicable exception to the warrant requirement. A seizure of a cell phone also requires probable cause or

at least reasonable suspicion, neither of which existed here. *United States v. Babcock*, 924 F.3d 1180, 1188 (11th Cir. 2019).

80. Defendant Cully's physical removal of Mr. Chapa's cell phone from his pocket during a Terry frisk without having felt a weapon constituted an independent Fourth Amendment violation. Terry v. Ohio authorizes only an external pat-down for weapons and does not permit pocket searches absent the feel of a weapon. *Terry v. Ohio*, 392 U.S. 1 (1968); *Minn. v. Dickerson*, 508 U.S. 366, 378 (1993).

81. As a direct and proximate result of the unlawful searches and seizures, Plaintiffs suffered loss of $25,378.00 in lawful currency, loss of cell phones and a Microsoft tablet and all data contained therein, loss of business contracts and income, emotional distress, and all other damages described herein.

## COUNT IV

### Equal Protection: Racial and Ethnic Discrimination
(42 U.S.C. §§ 1983 and 1981 - Fourteenth Amendment)
*(Against All Defendants)*

82. Plaintiffs reassert and incorporate Paragraphs 1-65 as if fully restated herein.

83. The Equal Protection Clause of the Fourteenth Amendment prohibits law enforcement officers from selectively targeting individuals for investigative stops, searches, and seizures based on race, ethnicity, or national origin. 42 U.S.C. § 1981 independently guarantees all persons the same rights to make and enforce contracts

and to the full and equal benefit of all laws as are enjoyed by all other persons, regardless of race or ethnicity.

84.    Defendants targeted, stopped, detained, searched, and seized Plaintiffs' property based on their Hispanic ethnicity and perceived national origin. The racially charged interrogation of the driver regarding drug proceeds, the questioning of Mr. Chapa about travel to Mexico and money transfers to Mexico, the assumption of cartel connections based solely on Hispanic surnames and appearance, and the seizure of lawful property while ignoring clear documentary evidence of its lawful origin all demonstrate that discriminatory animus was a motivating factor in Defendants' conduct.

85.    Defendant City of Saraland is liable for this equal protection violation as the moving force behind the discriminatory policy, custom, and failure to train described herein.

86.    As a direct and proximate result, Plaintiffs suffered dignitary harm, stigma, reputational injury, emotional distress, financial losses, and a lasting deprivation of the freedom to travel free from racially discriminatory scrutiny.

## COUNT V

### Assault and Battery
(Alabama State Law - Against Officers Cully and Little)
*(Individually)*

87. Plaintiffs reassert and incorporate Paragraphs 1-65 as if fully restated herein.

88. Defendants intentionally placed Plaintiffs in reasonable apprehension of imminent harmful or offensive contact through the coercive show of authority, physical commands, and threatening conduct during the stop. Defendant Cully made unauthorized and unlawful physical contact with Mr. Chapa by reaching into his pocket and forcibly removing his cell phone without consent, and by conducting a frisk that exceeded its lawful scope. The physical restraint and coercive physical contact imposed on Plaintiffs including upon a pregnant woman was without lawful justification or consent and constitutes assault and battery under Alabama law.

89. As a direct and proximate result, Plaintiffs suffered physical and emotional injury, and Mrs. Chapa suffered pregnancy complications.

## COUNT VI

### False Imprisonment
(Alabama State Law - Against Officers Cully and Little)
*(Individually)*

90. Plaintiffs reassert and incorporate Paragraphs 1-65 as if fully restated herein.

91. Defendants intentionally restrained the liberty and freedom of movement of all five (5) Plaintiffs against their will, without lawful authority, for a period substantially exceeding that necessary to address any alleged traffic infraction. The detention was imposed through show of authority and physical restraint and was

without valid legal justification after the officers had confirmed that all licenses, registration, and occupants' identification were clear.

92.   The continued detention of Plaintiffs including a pregnant woman, a two-year-old child in a car seat, and a thirteen-year-old minor on the roadside of a busy interstate highway in the absence of any criminal suspicion or probable cause constitutes false imprisonment under Alabama law.

93.   As a direct and proximate result, Plaintiffs suffered severe emotional distress, physical harm, and injury to their dignity and liberty.

## COUNT VII

### Municipal Liability (*Monell* Claim)
(42 U.S.C. § 1983)
*(Against Defendant City of Saraland Only)*

94.   Plaintiffs reassert and incorporate Paragraphs 1-65 as if fully restated herein.

95.   The City of Saraland is liable for the constitutional violations alleged herein pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), on the following independent and alternative grounds:

   a. The City maintained an official policy or widespread custom of conducting pretextual traffic stops targeting Hispanic and minority motorists and using civil asset forfeiture as a revenue-generating mechanism without adequate legal basis;

b.  The City maintained a widespread custom of deploying K-9 units following a motorist's refusal of consent, without independent reasonable suspicion, as a means of bypassing the Fourth Amendment's consent and warrant requirements;

c.  The City's deliberate failure to train its officers on the constitutional limitations of traffic stops (*Rodriguez*), Terry frisks (*Terry*; *Sibron*), K-9 deployment, warrantless seizure of electronic devices (*Riley*), and racial profiling constituted deliberate indifference to the constitutional rights of persons with whom its officers regularly come into contact; and

d.  The City ratified the unconstitutional conduct of Defendant officers by closing the case without discipline, facilitating the federal civil forfeiture proceedings, withholding public records, and failing to respond to Plaintiffs' timely Notice of Claim.

96.  Each of the foregoing grounds independently constitutes a basis for municipal liability under *Monell*. The City's deliberate indifference to the well-established constitutional rights of travelers in Saraland was the moving force behind every constitutional violation suffered by Plaintiffs in this action.

## V. DAMAGES

97.  As a direct and proximate result of Defendants' unlawful and unconstitutional conduct, Plaintiffs have suffered, and continue to suffer, significant and ongoing

damages. Plaintiffs seek damages in an amount to be proven at trial, believed to substantially exceed $1,000,000.00, exclusive of attorney's fees, litigation costs, and punitive damages, including but not limited to the following:

a. Loss of $25,378.00 in lawfully owned U.S. currency, unlawfully seized and converted to a cashier's check by Defendants without probable cause;

b. Loss of three (3) cell phones and one (1) Microsoft tablet with charger, including all business and personal data, communications, contacts, and proprietary information contained therein, seized without a warrant in violation of *Minn. v. Dickerson*;

c. Loss of business contracts, business relationships, and business income directly caused by the deprivation of Mr. Chapa's electronic devices and the data contained therein;

d. Medical expenses and damages incurred by Dalila Elizabeth Chapa for pregnancy complications and associated medical treatment causally attributable to the physical and emotional trauma of the unlawful stop, as supported by medical documentation from her treating physician;

e. Physical pain, suffering, and bodily injury sustained by Mrs. Chapa and other Plaintiffs during and following the unlawful stop;

f.  Physical symptoms and ongoing harm suffered by Raquel Rocha, including hair loss and related conditions, causally attributable to the trauma of the unlawful stop;

g.  Severe emotional distress, mental anguish, anxiety, fear, and loss of enjoyment of life suffered by all Plaintiffs, including minor children Sofia Elizabeth Chapa and Camila Chapa, and thirteen-year-old Raquel Rocha;

h.  Psychological harm to Sofia Elizabeth Chapa, a two-year-old child placed on the roadside of a busy interstate highway during a prolonged, coercive, and unlawful detention;

i.  Reputational harm, stigma, and dignitary injury suffered by Joel Chapa, including the lasting taint of being treated as a suspected drug trafficker and subjected to federal civil forfeiture proceedings, despite his clean record and distinguished law enforcement career;

j.  Ongoing deprivation of the right to free travel throughout the United States and internationally, including continuing discriminatory targeting at points of entry, proximately caused by Defendants' unlawful flagging of Mr. Chapa in government databases;

k.  Attorney's fees and costs incurred in the Notice of Claim proceedings, the CAFRA civil forfeiture defense (including approximately $9,000 in fees paid

to multiple attorneys), and this litigation, pursuant to 42 U.S.C. § 1988 and all applicable provisions;

l.  Punitive damages against Defendants Officer Gregory E. Cully and Officer C. Little, individually, for conduct that was intentional, malicious, oppressive, and in reckless or callous disregard of Plaintiffs' clearly established constitutional rights; and

m. Such other and further compensatory, special, and consequential damages as are proven at trial.

## VI. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Joel Chapa, Dalila Elizabeth Chapa, Javier Rocha, Sofia Elizabeth Chapa (by and through Joel Chapa as next friend and parent), Camila Chapa (by and through Joel Chapa as next friend and parent), and Raquel Rocha (by and through Dalila Elizabeth Chapa as next friend), respectfully pray that this Honorable Court enter judgment in their favor and against all Defendants, jointly and severally where applicable, and:

A.    Find and declare that Defendants violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981 and 1983, and Alabama state law;

B.     Award compensatory damages to each Plaintiff in an amount to be proven at trial;

C.     Award special damages including all documented economic losses: loss of $25,378.00 in currency, loss of electronic devices and data, loss of business contracts and income, all medical expenses incurred by Mrs. Chapa, and all attorney's fees incurred in the forfeiture proceedings;

D.     Award punitive damages against Defendants Officer Gregory E. Cully and Officer C. Little, individually, in an amount sufficient to punish their malicious and reckless conduct and to deter similar misconduct in the future;

E.     Enter injunctive relief requiring the City of Saraland to: implement constitutionally adequate written policies governing traffic stops, K-9 deployment, civil asset forfeiture, racial profiling, Terry frisks, and the seizure of electronic devices; provide mandatory constitutional law training to all Saraland Police Department officers; and establish meaningful supervisory and disciplinary protocols to ensure compliance;

F.     Order the return of all seized property not yet returned to Plaintiffs, or full monetary restitution for the fair market value of all property not returned in its original condition, including all data lost from electronic devices;

G.     Order the expungement or correction of any law enforcement, border security, or federal database entries, flags, or records created as a result of the June 17, 2024

incident that continue to subject Plaintiffs to enhanced scrutiny, discriminatory targeting, or any other adverse consequence;

H.      Award reasonable attorney's fees and litigation costs pursuant to 42 U.S.C. § 1988 and all other applicable statutes and rules;

I.      Award pre-judgment and post-judgment interest as permitted by law; and

J.      Grant such other and further relief, legal, equitable, or otherwise as this Court deems just and proper under the circumstances.

Respectfully submitted,

/s/ Richard A. Rice (RIC086)
ASB8387I66R
Richard A. Rice
115 Richard Arrington Jr. Blvd. N.
Birmingham, AL 35203
rrice@rice-lawfirm.com
888.391.7193 fax
205-618-8733 office
256-529-0462 mobile

## REQUEST FOR SERVICE OF PROCESS FOR EACH DEFENDANT LISTED BELOW BY CERTIFIED MAIL TO BE INITIATED BY THE CLERK'S OFFICE OR PLAINTIFF'S COUNSEL

**Defendant City of Saraland, Alabama:** Service upon the Mayor or City Clerk, City of Saraland, 1001 Saraland Boulevard, Saraland, Alabama 36571;

**Defendant Officer Gregory E. Cully, Badge No. 198:** Service upon the officer personally or through the Saraland Police Department, 1001 Saraland Boulevard, Saraland, Alabama 36571; and

**Defendant Officer C. Little:** Service upon the officer personally or through the Saraland Police Department, 1001 Saraland Boulevard, Saraland, Alabama 36571.

/s/*Richard A. Rice*
**Of Counsel**